## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

SAMMY DENNIS, )
)
      Plaintiff, )
)
v. ) No. 4:17CV1614 RLW
)
UNITED VAN LINES, LLC, )
)
      Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant United Van Lines, LLC's Motion to

Compel Arbitration or Dismiss Complaint (ECF No. 16).  The motion is fully briefed and ready

for disposition.

### I. Background

Plaintiff is a moving van owner-operator employed as a truck driver for moving

commercial and household goods.  (Compl. ¶ 2, ECF No. 1; Pile Decl. ¶¶ 4, 6, ECF No. 17-1)

Defendant is a licensed interstate household goods motor carrier under the federal Motor Carrier

Act that operates nationally through a network of regional agents, including Holman Moving

Systems ("Holman").  (Compl. ¶¶ 3, 10; Pile Decl. ¶ 3)  Defendant United classifies Plaintiff as

an independent contractor pursuant to a written Independent Contractor Operating Agreement

("ICOA") that Plaintiff entered into with Holman. [1]   (*Id.* at ¶ 11; Def.'s Ex. 1, Pile Decl. ¶¶ 4,-6,

ECF No. 17-1)  The ICOA provides, in part:

---

[1] Plaintiff objects to arbitration agreement on the grounds of authentication and foundation
because Mr. Pile's declaration is "upon information and belief" that a true copy of the ICOA is
attached as Exhibit A.  (Pl.'s Suggestions in Opp. p. 5 n. 1, ECF No. 25)  However, Plaintiff does
not contend that the signature on the ICOA is not his or that the document is not the agreement
containing the arbitration clause that Defendant seeks to enforce.  Indeed, Plaintiff relies on the

> Any dispute (including a request for preliminary relief) arising in connection with or relating to this Agreement, its terms, or its implementation, including any allegation of tort or of breach of this Agreement or of violations of the requirements of any applicable government authorities, whether local, state, federal, or foreign . . . shall be fully and finally resolved by arbitration in accordance with (1) the Commercial Arbitration Rules . . . of the American Arbitration Association ("AAA"); (2) the Federal Arbitration Act (ch. 1 of tit. 9 of United States Code, with respect to which the parties agree that this Agreement is not an exempt "contract of employment") or, if the Federal Arbitration Act is held not to apply, the arbitration laws of the State of Missouri; and (3) the procedures set forth below.

(Pile Decl. Ex. A ¶ 25, ECF No. 17-2)  The ICOA further provided that "the parties agree that no consolidated or class arbitration shall be conducted."  (*Id.* at ¶ 25(b))

On June 2, 2017, Plaintiff filed a Class Action Complaint under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and under the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. §§ 290.500, *et seq.*  Plaintiff brings the suit on behalf of himself and putative class members, who are current and former United drivers that Plaintiff alleges are improperly misclassified as independent contractors.  (Compl. ¶¶ 6-8)  Plaintiff contends that Defendant United failed to pay Plaintiff and the class the federal minimum wage in violation of the FLSA and the MMWL.  (*Id.* at ¶¶ 37-60)

On July 25, 2017, Defendant filed the present Motion to Compel Arbitration or Dismiss Complaint, arguing that the ICOA governs the relationship between Plaintiff and Holman, including the terms of Plaintiff's compensation.  Defendant also contends that the ICOA provides that all disputes arising out of the ICOA must be arbitrated.  Further, Defendant asserts that Plaintiff must be compelled to arbitrate his claims on an individual basis because the IOCA

---

terms of the ICOA attached Defendant's memorandum in support of his assertion that the Court should apply Missouri, not Delaware, law.  (Pl.'s Suggestions in Opp. pp. 3-4, ECF No. 25)  Thus, the Court finds the Exhibit is an authentic arbitration agreement.

prohibits consolidated or class arbitrations.  In the alternative, Defendant argues that Plaintiff's claims should be dismissed.[2]

## II. Legal Standard

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, "'establishes a liberal federal policy favoring arbitration agreements.'" *M.A. Mortenson Co. v. Saunders Concrete Co., Inc.*, 676 F.3d 1153, 1156 (8th Cir. 2012) (quoting *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005)).  "[W]hen deciding whether to compel arbitration, a court asks whether a valid agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that agreement." *Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011) (citation omitted).  "The Supreme Court has repeatedly noted that the Federal Arbitration Act was designed to combat longstanding hostility to arbitration by establishing 'a liberal federal policy favoring arbitration agreements.'" *Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.*, 334 F.3d 721, 725 (8th Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  "[T]he validity of the arbitration clause and its applicability to the dispute at hand are questions for the district court to decide." *Id.* at 726 (citation omitted).  Under the FAA, any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (citation omitted).  "Additionally, any 'party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" *Owner-Operator Indep. Drivers Ass'n, Inc. v. United Van Lines, LLC*, No. 4:06CV219 JCH, 2006 WL 5003366, at *2

---

[2] Defendant also makes the alternative suggestion that the case should be transferred to the Middle District of Florida where a case is pending which asserts the same allegations on behalf of the same class. *Judge, et al., v. UniGroup, Inc., et al.*, Case No. 8:2017-cv-201-T-23TGW. Defendant has subsequently filed supplemental authority indicating that United States District Judge Steven D. Merryday granted in part the defendant's motion to compel arbitration and stayed the plaintiffs' claims pending arbitration.  (ECF No. 29)

(E.D. Mo. Nov. 15, 2006) (quoting *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

### III. Discussion

Under the ICOA, Plaintiff agreed to arbitrate any dispute arising in connection with or relating to the Agreement. Plaintiff argues, however, that his FLSA and State Minimum Wage Claims are not subject to arbitration because no arbitration agreement exists between Plaintiff and Defendant, the arbitration agreement does not apply to Plaintiff's statutory claims, Plaintiff is exempt from the FAA as a transportation worker, and the class action waiver in the ICOA is unenforceable. The Court will discuss each argument in turn.

### A. Enforceability of Agreement between Plaintiff and United

Plaintiff asserts that United cannot enforce the ICOA between Plaintiff and Holman because Defendant United is not a signatory to the agreement. Defendant United maintains that it can enforce the agreement pursuant to the doctrine of equitable estoppel, which permits non-signatories to enforce arbitration agreements.

"The Supreme Court has ruled that state contract law governs the ability of nonsignatories to enforce arbitration provisions." *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009) (citation omitted). "'[A] litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the Federal Arbitration Act] if the relevant state contract law allows him to enforce the agreement.'" *Id.* (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).

At the outset, the parties disagree as to which state law controls. Plaintiff contends that Missouri law applies because the arbitration clause in the ICOA "contains a choice-of-law provision stating that Missouri law governs." (Pl.'s Suggestions in Opp. p. 3. ECF No. 25)

4

Defendant, on the other hand, asserts that Delaware law applies because the "ICOA contains a general choice-of-law clause stating that the agreement is governed by the law of Delaware." (Def.'s Mot. to Compel Arbitration p. 5, ECF No. 17)

The ICOA provides, "[t]his Agreement is to be governed by the laws of the United States and, except as otherwise provided herein, the State of Delaware, including the choice-of-law rules of such State." (ECF No. 17-2 ¶ 24) With regard to dispute resolution, if the FAA is held not to apply, then "the arbitration laws of the State of Missouri" shall apply. (*Id.* at ¶ 25(a)) Here, the Court finds that Delaware law applies.

In *Donaldson*, a nonsignatory sought to compel arbitration against a company that was a signatory to an agreement with an arbitration clause. 581 F.3d at 729. The agreement contained an arbitration provision stating that controversies arising out of the agreement shall be settled by arbitration in St. Louis County, Missouri. *Id.* However, the agreement also stated that it shall be governed by the laws of the state where the signatory's principal place of business was located, which was Mississippi. *Id.* at 730. The Eighth Circuit, in determining whether a nonsignatory could enforce the arbitration provision in the agreement under equitable estoppel, applied Mississippi state law. *Id.* at 732. Here, the provision of the ICOA upon which Plaintiff relies pertains only to the arbitration laws of Missouri in the event that the FAA does not apply. As in *Donaldson*, the state law governing the agreement is controlling, which in this case is the State of Delaware.

"Like many jurisdictions, Delaware allows a nonsignatory to a contract to compel a signatory to arbitrate under an equitable estoppel theory." *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. CIV.A. 2037-N, 2006 WL 2473665, at *4 (Del. Ch. Aug. 22, 2006). The theory of equitable estoppel compels a signatory to arbitrate with a nonsignatory where (1) "'the signatory

5

to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory[;]" or (2) "'the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *Id.* at \*5 (quoting *Grigson v. Creative Arts Agency*, 210 F.3d 524, 527 (5th Cir. 2000)); *see also Incyte Corp. v. Flexus Biosciences, Inc.*, No. N15C-09-055MMJCCLD, 2016 WL 1735485, at \*6 (Del. Super. Ct. Apr. 19, 2016).

Here, Defendant argues that Plaintiff's FLSA claims depend upon the work he performed for Holman pursuant to the ICOA. Further, Defendant contends that Plaintiff's theory of liability alleges that the signatory, Holman, and Defendant United engaged in concerted misconduct that resulted in the misclassification of Plaintiff as an independent contractor and the failure to pay minimum wages. The Court agrees that equitable estoppel applies in this case.

Plaintiff's claims against Defendant United depend on his classification as an independent contractor and the work he performed as a truck driver under the ICOA with Holman. The ICOA provides that "any dispute . . . arising in connection with or relating to this Agreement, its terms, or its implementation" shall be resolved through arbitration. (ECF No. 17-2 ¶ 25(a)) Plaintiff's allegations that Defendant United violated the FLSA and MMWL because he was misclassified as an independent contractor by United, which "directs and controls Plaintiff's employment through Holman," demonstrate that the dispute arises in connection with the terms of the ICOA classifying and compensating Plaintiff as an independent contractor. (Compl. ¶ 11) Plaintiff's argument that he and the putative class "are owed minimum wages under the FLSA depends on whether the plaintiffs were mischaracterized as independent contractors" and thus arise in connection with or relate to the ICOA. *Judge v. Unigroup, Inc.*,

6

No. 8:17-cv-201-T-23TGW, 2017 WL 3971457, at *4 (M.D. Fla. Sept. 8, 2017). Under
Delaware law, "[a] signatory's 'claims arise out of and relate directly to the written agreement'
when the 'claims against a nonsignatory [make] reference to *or [presume] the existence of* the
written agreement.'" *Duncan v. Banks*, No. SA-15-CV-148-XR, 2015 WL 5511253, at *12
(W.D. Tex. Sept. 16, 2015) (quoting *Wilcox,* 2006 WL 2473665 at *5 (emphasis added)).

Further, because Plaintiff claims that Defendant United exercised control of Plaintiff's
employment and classified Plaintiff as an independent contractor through Holman, Plaintiff
essentially alleges that concerted misconduct by both nonsignatory, United, and signatory,
Holman, by misclassifying him and failing to pay minimum wage. (Compl. ¶¶ 10-12) Plaintiff
cannot claim that United and Holman are his employers responsible for FLSA and MMWA
violations yet deny United the right to invoke the arbitration clause. *See Ishimaru v. Fung*, No.
CIV.A. 929, 2005 WL 2899680, at *18 (Del. Ch. Oct. 26, 2005) ("One of the primary
justifications for estopping a signatory from denying a non-signatory a right to arbitrate is that it
is unfair for the signatory to have it both ways by attributing to a non-signatory the duties of a
contract signatory for purposes of pressing claims but denying the non-signatory the right to
invoke the arbitration clause."). Thus, the Court finds that equitable estoppel applies, and
Defendant can compel arbitration of the ICOA under Delaware law.[3]

---

[3] The outcome would be the same if the Court applied Missouri law. Courts in this district have
"recognized that a nonsignatory can enforce an arbitration clause against a signatory to the
agreement in certain circumstances," including where a signatory's claims against a nonsignatory
refers to or presumes the existence of a written agreement. *LDM Grp., LLC v. Akers*, No. 4:12-
CV-812-JAR, 2013 WL 1316420, at *7 (E.D. Mo. Mar. 29, 2013) (citation omitted); *see also
Tucker v. Vincent*, 471 S.W.3d 787, 796 (Mo. Ct. App. 2015) (acknowledging that "there are
limited circumstances under which some courts have allowed a non-signatory to an arbitration
agreement to enforce the arbitration agreement against a signatory," including where there is a
close relationship between the signatory and nonsignatory such that underlying agreement will
be eviscerated by not enforcing the arbitration clause or where the signatory must rely on the
terms of the written agreement in asserting its claims against the nonsignatory). As stated above,

## B. Applicability of the Arbitration Agreement to Plaintiff's Claims

Next, Plaintiff argues that the arbitration agreement in the ICOA does not encompass Plaintiff's statutory causes of action under the FLSA and MMWL. Defendant asserts that Plaintiff's claim that he was misclassified as an independent contractor falls within the scope of the ICOA. The Court addressed this above, but it bears repeating that Plaintiff claims Defendant violated the FLSA and MMWA by misclassifying him as an independent contractor thereby failing to pay him minimum wage. Plaintiff's classification as an independent contractor is set forth in the ICOA, and the work for which Plaintiff seeks additional pay was performed pursuant to the ICOA. Further, the arbitration provision in the ICOA covers "any dispute . . . arising in connection with or relating to this Agreement, its terms, or its implementation." (ECF No. 17-2 ¶ 25(a)) "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005) (citation omitted). Here, the dispute raised by Plaintiff arises in connection with the ICOA, which governs Plaintiff's classification and compensation, because Plaintiff alleges that he was misclassified as an independent contractor and thus did not receive the pay he was entitled to under federal and state statutory provisions. Therefore, the Court finds that the arbitration agreement applies to Plaintiff's FLSA and MMWA claims.

## C. Exemption Under the FAA

Plaintiff next argues that he is exempt under the FAA as a transportation worker. Under § 1 of the FAA, the FAA does not "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. "Courts construe this exemption narrowly, *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351

---

Plaintiff must rely upon the ICOA in claiming that Defendant United violated the FLSA and the MMWA by misclassifying and underpaying Plaintiff as an independent contractor.

(8th Cir. 2005), but the FAA does exclude contracts of employment for transportation workers."
*Owner-Operator Indep. Drivers Ass'n, Inc.*, 2006 WL 5003366, at *2 (citing *Circuit City Stores,
Inc. v. Adams*, 532 U.S. 105, 109 (2001)). However, under the present ICOA, Plaintiff is an
independent contractor and not an employee. While Plaintiff argues that he was in fact an
employee by virtue of the duties he performed for Defendant as a truck driver, a court in this
district has found that "unless the nonmoving party proves to the court that the FAA does not
apply, the court should apply the characterization of the relationship described in the agreement
and find that an owner-operator characterized as an independent operator does not have a
contract of employment with the carrier." *Id.* at *3 (citations omitted). This standard better
effectuates the goals of the FAA by furthering the policies of favoring arbitration and narrowly
construing the FAA's exceptions and also providing a sound methodology, placing upon the non-
moving party the burden of proving that the FAA does not apply, to determine whether an
agreement meets the criteria of a contract of employment. *Id.*; *see also Davis v. Larson Moving
& Storage Co.*, No. 08-1408 (JNE/JJG), 2008 WL 4755835, at *4-*5 (limiting § 1 to
employment contracts and not applicable to an independent contract operating agreement).

Plaintiff contends that he performed the duties of transporting consumer goods around the
United States under the control of Defendant and under long-term conditions of employment.
Specifically, Plaintiff asserts Defendant controlled the hours and shifts Plaintiff worked; the
appearance, use, and insurance of the trucks; the rates of pay; and the routes Plaintiff drove.
Plaintiff argues that this control by Defendant establishes that Plaintiff was an employee and not
an independent contractor.

However, under the ICOA, Plaintiff assumed full control over scheduling work hours and
rest periods; selecting routes and stops; making decisions regarding maintenance; and arranging

9

for loading and unloading. (ECF No. 17-2 ¶ 7(c)) Further, Plaintiff furnished his own truck and was able to hire, pay, supervise, and discharge additional personnel. (ECF No. 17-2 ¶¶ 1(a), 7(a)) "Because federal law strongly favors arbitration and because the agreements reserve to the plaintiffs the discretion that is characteristic of a contractor, the plaintiffs fail to meet their burden of establishing that they are Section 1 exempt employees." *Judge*, 2017 WL 3971457, at *3; *see also Davis*, 2008 WL 4755835, at *6 (finding plaintiff had not established he was functionally an employee of defendant where the ICOA required plaintiff to provide his own truck, and plaintiff had control over selection of routes, truck maintenance decisions, loading and unloading arrangements, work hour scheduling, and hiring additional personnel). Therefore, the Court finds that the ICOA is not a contract of employment exempted under § 1, and the FAA applies to Plaintiff's claims.

## D. Enforceability of the Class Action Waiver

Last, the Plaintiff claims that the class action waiver in the ICOA is unenforceable because the FAA does not apply. As stated above, Plaintiff's claims are governed by the arbitration clause in the ICOA and the FAA. Further, the Eighth Circuit Court of Appeals has held that "arbitration agreements containing class waivers are enforceable in claims brought under the FLSA." *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013). Although Plaintiff urges the Court to defer ruling until the United States Supreme Court makes a determination in *Ernst & Young, LLP v. Morris*, 137 S. Ct. 809 (2017), the Court notes that the underlying *Morris* case addressed whether an employer violates the National Labor Relations Act ("NLRA") by requiring employees to sign an agreement precluding them from bringing a concerted legal claim regarding wages, hours, and terms and conditions of employment. *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 979 (9th Cir. 2016). The Court notes that the agreements

10

and waivers in the *Morris* case were set forth in contracts of employment covered by the NLRA, and not independent contractor operating agreements found in the present case. The Court finds that *Owen* is the controlling law in this case, and thus, the class action waiver is enforceable. *See Owen*, 702 F.3d at 1053 (finding plaintiff failed to identify anything "in either the text or legislative history of the FLSA that indicates a congressional intent to bar employees from agreeing to arbitrate FLSA claims individually, nor is there an 'inherent conflict' between the FLSA and the FAA"). Because the Court finds that Defendant's motion to compel arbitration should be granted, the Court will not address Defendant's alternate arguments that the case should be dismissed under Rule 12 of the Federal Rules of Civil Procedure or transferred under the first-filed rule.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration (ECF No. 16) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **STAYED** pending the completion of arbitration proceedings. The parties shall jointly submit a joint status report in this case no later than ten (10) days following the completion of arbitration.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall administratively close this case pending completion of arbitration.

Dated this 1st day of November, 2017.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

11